IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DAVID STEIDELL,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CR. NO. 12-01259-02 DKW<br>CV. NO. 17-00045 DKW-KJM<br><br>**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

On May 20, 2014, Petitioner David Steidell pled guilty, without a plea agreement, to: conspiracy to distribute MDMA and N-Benzypiperazine ("BZP"), in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(C) ("Count 1"); conspiracy to distribute and possess with intent to distribute 50 grams or more of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) ("Count 2"); distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) ("Count 3"); and possession of BZP with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count 5"). *See* Superseding Indictment, ECF No. 76. This Court later sentenced Steidell to 170 months' imprisonment and five years of supervised release as to each count, to run concurrently, and imposed a monetary assessment of $400.

Judgment 3, 4, 6, ECF No. 152.  Relying on 28 U.S.C. § 2255, Steidell now seeks to vacate his guilty plea and/or sentence, based on the alleged ineffective assistance of counsel.  *See* Mot. Under 28 U.S.C. § 2255, ECF No. 209 [hereinafter Section 2255 Motion].

After careful consideration of the instant motion, the briefs, the materials in the record, and the relevant legal authority, Steidell's Section 2255 Motion is DENIED.  The Court also DENIES a Certificate of Appealability.

## **BACKGROUND**

### I.    **Indictment And Guilty Plea**

Based on a Criminal Complaint and Affidavit by HSI Special Agent Todd J. Nerlin[1] filed on December 4, 2012, a Magistrate Judge found probable cause to order the arrest of Steidell and three others for several drug-related felony offenses under Title 21 of the United States Code.  Crim. Compl. 2, ECF No. 1.  On December 20, 2012, a grand jury indicted these four defendants (ECF No. 9) and, on December 21, 2012, a Magistrate Judge appointed Cary Virtue, Esq., to represent Steidell throughout the proceedings.  ECF No. 14.

On February 5, 2014, the grand jury returned a Superseding Indictment, charging Steidell with four counts, including Count 5:

---

[1] Department of Homeland Security, Homeland Security Investigations.

> From on or about October 9, 2012, to on or about December 10, 2012, within the District of Hawaii, and elsewhere, **DAVID STEIDELL** . . . , did willfully and unlawfully possess with intent to distribute a controlled substance, to include . . . **BZP**, a substance controlled under Schedule I, Title 21 of the United States Code, Section 812, and Title 21, Code of Federal Regulations, Section 1308.11(f)(2), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Superseding Indictment, ECF No. 76 (emphasis in original).

On May 20, 2014, Steidell pled guilty. *See* Tr. of Hr'g, May 20, 2014, ECF No. 122 [hereinafter Tr. of COP Hr'g]. At the plea hearing, Steidell acknowledged that he fully understood—and had consulted with Mr. Virtue regarding—the charges against him and stated his intention to plead guilty to Counts 1, 2, 3, and 5 of the Superseding Indictment. Tr. of COP Hr'g at 5–7, 15–16. As part of the plea colloquy, Steidell specifically confirmed his understanding that a guilty plea would require him to "waive [his] right not to incriminate [him]self" by "admitting to both the type of drug involved as well as [his] knowledge as to the type of drug involved at the time of each of the offenses that are set forth in the superseding indictment[.]"[2] Tr. of COP Hr'g at 10, 15 (explaining that this waiver of rights is intended to "establish a factual basis for" a guilty plea and to "get comfort that [Steidell] in fact committed the crimes" he would be pleading guilty to). At the

---

[2] Steidell also confirmed that he understood that, "because the mandatory minimum sentence is involved, at least with respect to Counts 2 and 3, at any trial the government would have to prove both the type of drug involved as well as its weight and purity to the jury beyond a reasonable doubt and that [by pleading guilty, Steidell was] waiving that right[.]" Tr. of COP Hr'g at 10.

3

Court's request, Assistant United States Attorney Chris A. Thomas then summarized the evidence that the Government had against Steidell on each of the four counts. Tr. of COP Hr'g at 16.

Steidell, who had earlier answered the Court's question—"Are you pleading guilty this morning because you are guilty?"—in the affirmative, also confirmed the facts underlying the alleged offenses. Tr. of COP Hr'g at 7, 20–29, ECF No. 122. His admissions included the factual basis for Count 5—i.e., that the "pills seized during the consent search of Mr. Steidell, Sr.'s storage locker on December 10, 2012" belonged to Steidell, were intended for distribution, were "submitted to laboratory testing," and were found to consist of "6,642 tablets . . . [,] 2,569 [of which] contained the active drug ingredient of . . . BZP." Tr. of COP Hr'g at 20–21.

After accepting Steidell's guilty plea (*id*. at 36–37), the Court scheduled a sentencing hearing for September 2014.

## II. Sentencing And Other Post-Sentencing Matters

The United States Probation Office issued Steidell's draft PSR on July 21, 2014.[3] On August 4, 2014, Mr. Virtue filed Steidell's Sentencing Statement listing nine objections to the draft PSR, which included the assertion that certain factual statements by Steidell's co-defendants were biased, and pointing out various

---

[3]The PSR was subsequently revised on August 26, 2014, and again on September 9, 2014. *See* PSR, ECF No. 154.

perceived calculation errors with respect to Steidell's criminal history level determination. Def. Obj. to Draft PSR, ECF No. 138. With respect to the physical evidence, the Sentencing Statement objected to:

> [P]aragraphs 35, 42, 44, 45, 46, and 47 [of the PSR] as to the amount of drug quantities attributed to Steidell[;] and the unreliable relevant conduct attributed to hearsay statements made by two co-defendants, who are motivated by self-interest to blam[e] Steidell for additional alleged amounts of [ecstasy], and BZP, resulting in a higher base level of 33.

Obj. to Draft PSR ¶ 4.

At the September 9, 2014 sentencing hearing, the Court addressed these concerns and overruled Steidell's objections, explaining that "[t]he drug quantities are based largely on the transactions that the [undercover-informant/law-enforcement agent ('UC')] negotiated and consummated," the majority of which "occurred directly between the UC and the defendant." Tr. of Hr'g 10–11, Sept. 9, 2014, ECF No. 183 [hereinafter Tr. of Sentencing Hr'g]. "Once the transaction was consummated, the UC submitted the drugs that he received from the defendant to law enforcement laboratories, and those laboratories were responsible for the tablet counts as well as the substance weight and purity results" in the Amended PSR. Tr. of Sentencing Hr'g at 11. As such, the Court explained, "the mere fact that some of the drug quantities are attributed to the defendant, based on statements of his codefendants, is of little consequence," and "[t]he codefendants are . . . . all going to be held responsible for the drugs that they transacted." *Id*. at 11–12.

5

The Court also adopted the factual findings of the PSR as its own (*see* Tr. of Sentencing Hr'g at 17, ECF No. 183); addressed the additional defense objections to the PSR (*id*. at 14–17); and made adjustments to the applicable sentencing guideline range based on arguments from both sides (*id*. at 17–39). After allocution, during which Steidell admitted responsibility and apologized to the Court for his actions (*id*. at 30), the Court sentenced Steidell to 170 months' imprisonment and 5 years of supervised release, as to each Count, terms to run concurrently, and imposed a $400 mandatory special assessment (*id.* at 39–41). *See* Judgment 3, 4, 6, ECF No. 76.

Steidell filed his Section 2255 Motion (ECF No. 209) on January 27, 2017. In it, he alleges that he "Was Denied Due Process and Did Not Have the Assistance of Counsel For His Defense" as grounds for the Court to vacate his guilty plea and sentence. Section 2255 Mot. 4–6. To the extent Steidell offers any specific grounds for his request, they appear in his reply brief filed on June 28, 2017. Pet'r's Reply to Resp't's Resp., ECF No. 222. In that document, Steidell states that he is seeking to vacate his sentence as to Count 5 because:

> [Defense] counsel was given notice of the "destruction of evidence" but did not make a timely objection at the time of Petitioner's sentencing[;] this was improper since said plain error with said documentary evidence had probative value to dispute the allegations made by Respondent in the indictment at the time of sentencing. This prejudiced Petitioner since said destroyed evidence was reliable or material to the issue of guilt given in Petitioner's sentencing.

6

Reply 4. The Court construes this argument as a claim for ineffective assistance of counsel. Steidell also requests an evidentiary hearing. Reply 4.

## **STANDARD OF REVIEW**

Under 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id.*

To prevail on an ineffective assistance of counsel claim, a Section 2255 petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness—i.e., that counsel's performance was deficient; *and* (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"—i.e., that the deficiency was prejudicial. *Strickland v. Washington,* 466 U.S. 668, 688, 692–94 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

In addition, the court shall hold an evidentiary hearing on a petitioner's Section 2255 motion "[u]nless the motion and the files and records of the case

7

conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). That is, "[a] hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id*. (citing *Blackledge v. Allison*, 431 U.S. 63, 76 (1977); *Baumann v. United States*, 692 F.2d 565, 571, 581 (9th Cir. 1982)).

As set forth below, none of Steidell's allegations meet these standards.

## **DISCUSSION**

Steidell has neither shown that the challenged aspects of Mr. Virtue's conduct were deficient nor that the allegedly deficient conduct caused him prejudice. Thus, Steidell's Section 2255 Motion is DENIED.

Under the *Strickland* standard, Steidell must at least identify how trial counsel was ineffective. 466 U.S. at 692–94; *accord Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir.), *cert. denied*, 562 U.S. 965 (2010).

In his Section 2255 Motion, Steidell lists the following five transgressions:

> 1) Counsel was not aware of the "relevant facts" surrounding the case, to wit: type and quantity of substance;

8

> 2) Counsel was not aware of the "relevant law" surrounding the case, to wit: elements of [21 U.S.C. §] 841;
>
> 3) Counsel did not object to the sufficiency of the indictment;
>
> 4) Counsel did not object to the type nor quantity being used, before an open plea was given nor at sentencing; [and]
>
> 5) Counsel could not provide assistance of counsel for Petitioner's defen[se], without knowledge of the above, as counsel could not properly advise Petitioner how to proceed, i.e., plead guilty, or not guilty, or prepare an effective defensive strategy.

Section 2255 Mot. at 7. Steidell's Motion, however, offers no details. For instance, Steidell does not identify what "relevant law" Mr. Virtue was allegedly unaware of, nor does Steidell identify what was supposedly insufficient about the Government's indictment. *See Blackledge*, 431 U.S. at 74. Neither the Court nor Mr. Virtue should be in the position of having to guess. *Cf., e.g.*, *Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004) (explaining that "the movant must provide 'the court sufficiently precise information'" to support the urged ruling) (quoting *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003)). On this basis alone, Steidell's petition should be denied. *Strickland*, 466 U.S. at 692–94.

Steidell's argument is somewhat more specific in his June 28, 2017 reply brief (ECF No. 222), wherein he appears to seek resentencing solely as to Count 5 because the BZP tablets on which that count was based were destroyed by the

Government after laboratory testing had concluded. For the reasons set forth below, the Court also finds this argument to be unpersuasive.

On May 20, 2014, Steidell pled guilty to Count 5 and admitted to the facts underlying that count, including that he intended to distribute the BZP seized from a storage locker that belonged to his father. *See* Tr. of COP Hr'g, ECF No. 122. After reciting an oath of honesty, Steidell repeatedly confirmed during this hearing that he understood the facts underlying each of the charged offenses to be true. Tr. of COP Hr'g at 7, 15, 22–29; *see also* Resp. at 10–12, ECF No. 217.[4] "[S]worn statements made by a pleading defendant during a Rule 11 colloquy 'carry a strong presumption of verity,' and require the dismissal of any § 2255 motion relying on contrary allegations absent 'extraordinary circumstances[.]'" *Gao v. United States*, 375 F. Supp. 2d 456, 463–64 (E.D. Va. 2005) (citing *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005)).

Whatever the ultimate fate of the BZP underlying Count 5, it is clear from these statements that by the time of Steidell's guilty plea in May 2014, he was aware of and admitted to the details of the government's investigation and his sentencing exposure. Steidell provides no "extraordinary circumstances" as to why the Court should discount the verity of his factual admissions during the plea

---

[4]Respondents also point out that during allocution at sentencing, Steidell similarly took responsibility for his actions when apologizing to the Court. Tr. of Sentencing Hr'g at 30, ECF No. 183 ("I know that what I did was wrong, and I understand that I'm going to have to accept the punishment that I have coming to me.").

colloquy. *Gao*, 375 F. Supp. 2d at 463–64 (citation omitted); *see also Blackledge*, 431 U.S. at 74 (explaining that conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall short of stating a cognizable claim for ineffective assistance of counsel).

After pleading guilty to Count 5, the Government disclosed to all defense counsel that the BZP tablets underlying that count had been inadvertently destroyed subsequent to chemical analysis. *See* Trial Br. of U.S.A. 22–23, ECF No. 119. Because that disclosure did not occur until June 4, 2014 (*id*. at 22), two weeks *after* Steidell pled guilty, Mr. Virtue could not have advised Steidell of the facts associated with this destruction prior to his plea, as suggested by Steidell. Nor was there any point in Mr. Virtue attempting to set aside Steidell's plea as to Count 5 on this basis because the Court rejected the same evidentiary challenge now asserted by Steidell in September 2014 when alleged by one of Steidell's co-defendants. *See* Order Denying Def.'s Mot. to Suppress Secondary Evid. due to Gov't Destruction of Evid., ECF No. 167.[5]

---

[5]Approximately two weeks after Steidell's May 20, 2014 change-of-plea hearing, the Government filed a document in co-Defendant Jasmine Trujillo's case stating that "[i]n preparation for [Trujillo's] trial[,] it was discovered that the 2,569 tablets" seized from Steidell's storage locker on December 10, 2012, "were inadvertently destroyed while in storage by an employee of U.S. Customs and Border Protection ('CBP')" after the Government had completed its laboratory testing of that evidence. Tr. Br. of U.S.A. 22, ECF No. 119. On August 25, 2014, Trujillo filed a motion to suppress the apparently destroyed evidence (ECF No. 145), which the Government opposed on September 8, 2014 (ECF No. 151). Following an evidentiary hearing on the motion, this Court denied and terminated it. *See* ECF No. 158; *see also* Tr. of Proceedings, Sept. 11, 2014, ECF No. 180. The Court subsequently set forth its analysis and

11

Finally, Steidell appears to assert that Mr. Virtue should have at least objected to the inclusion of the BZP underlying Count 5 at the time of sentencing. Had Mr. Virtue done so, according to Steidell, the PSR's base offense level calculation—which is based on the quantity of controlled substances for which a defendant is held responsible—would have been different, resulting in a lower applicable guideline range. Steidell is factually and legally incorrect.

First, Mr. Virtue did object to the inclusion of the BZP underlying Count 5. On August 4, 2014, Mr. Virtue filed defense objections to the draft PSR, which included objections to "paragraphs 35, 42, 43, 44, 45, 46 and 47 as to the amount of drug quantities attributed to Steidell." Def. Obj. to Draft PSR at 2, ECF No. 138. All seven of the referenced PSR paragraphs concern, in part, the inclusion of the 2,569 tablets of BZP of which Steidell complains.

Second, even had the Court excluded *all* of the BZP and MDMA identified in the PSR from Steidell's base offense level calculation, it would have made no difference in the applicable guideline range. According to the PSR, the total amount of controlled substances for which Steidell was responsible was determined to be "34.1 grams of MDMA; 3,999.2 grams of BZP; and 110.9 grams of 'ice.'" PSR ¶¶ 45–46, ECF No. 154. As the PSR explains, these numbers

---

reasoning for denying Trujillo's motion to suppress via written order filed September 15, 2014. Order Denying Def.'s Mot. to Suppress, ECF No. 167.

include "all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." PSR ¶ 43 (citing U.S.S.G. § 1B1.3(a)(2)). Additionally, "Counts 1, 2, 3, and 5 are grouped for guideline calculation purposes." PSR ¶ 41 (citing U.S.S.G. § 3D1.2(d)). By applying the guidelines' Drug Equivalency Table to the PSR's summary findings, the total "marijuana equivalency" of the various controlled substances for which Steidell was responsible was 2,634.97 kilograms.[6] PSR ¶ 46 (citing U.S.S.G. § 2D1.1, Application Note 5). That equates to a base offense level of 32. Am. PSR ¶ 47 (citing U.S.S.G. § 2D1.1(c)(4)).[7]

As previously stated, to meet the second *Strickland* requirement for ineffective assistance of counsel, Steidell must demonstrate that his base offense level would have been different if its calculation excluded the 2,569 tablets of BZP underlying Count 5. Steidell cannot do that. In fact, if all of the BZP and MDMA referenced in the PSR had been excluded from the base offense level calculation,

---

[6]Specifically, under the guidelines: 3,999.2 grams of BZP, which is equal to 3.9992 kilograms of BZP, has a "marijuana equivalency" of 399.92 kg; 110.9 grams of "ice," which refers to a "mixture or substance containing d-methamphetamine hydrochloride of at least 80 percent purity," is equivalent to 2,218.0 kg of marijuana; and 34.1 grams of MDMA is equivalent to 17.05 kg of marijuana. PSR ¶¶ 35, 40 (citing Footnote C to the Drug Quantity Table, U.S.S.G. § 2D1.1(c)), 45, 46. Those marijuana equivalencies, when added together, equal a sum total marijuana equivalency of 2,634.97 kg. PSR ¶ 46, ECF No. 154.

[7]The sentencing guideline applicable to Steidell's crimes under 21 U.S.C. § 841(a)(1) is found in Section 2D1.1 of the United States Sentencing Guidelines, which states that "an offense involving at least 1,000 kilograms but less than 3,000 kilograms of marijuana has a base offense level of 32." PSR ¶ 47.

leaving only methamphetamine, Steidell would still have been left with a marijuana equivalent of 2,218 kilograms. *See* PSR ¶ 46, ECF No. 154. This number is still "at least 1,000 kilograms but less than 3,000 kilograms," leaving Steidell's base offense level under Section 2D1.1(c)(4) of the guidelines exactly the same—32. *See* Am. PSR ¶¶ 46–47. As such, the deletion of the 2,569 BZP tablets urged by Steidell has no effect on the guideline calculations and caused Steidell no prejudice. *See Strickland*, 466 U.S. at 691-94.

Steidell has neither demonstrated Mr. Virtue's deficient performance, nor that he was prejudiced by Mr. Virtue's actions.[8] Accordingly, there is no basis to Steidell's Section 2255 Motion.

## EVIDENTIARY HEARING

The Court is required to hold an evidentiary hearing on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The issues raised here can be conclusively decided on the basis of the evidence in the record.

---

[8]The Court notes that Steidell, in fact, expressed his *satisfaction* with Mr. Virtue's representation at his May 20, 2014 change-of-plea hearing. *See* Tr. of COP Hr'g at 5, ECF No. 122. Mr. Virtue has declared that he did, in fact, "thoroughly investigate[] the type and quantity of drugs" charged prior to that hearing and "did object to some of the MDMA quantity being counted." Virtue Decl. ¶ 7, ECF No. 217-4. Mr. Virtue therefore must have addressed the issue of quantity of controlled substances with Steidell prior to the hearing, and Steidell's satisfaction must have included Mr. Virtue's handling of that issue. Steidell's statements to the contrary now, after sentencing, suggest that his dissatisfaction stems from the sentence he received, not from Mr. Virtue's performance. *See Gao*, 375 F. Supp. 2d at 464 (holding that defendant's statements of satisfaction with counsel "preclude consideration of any ineffective-assistance claim the grounds for which were apparent to petitioner" when she plead).

14

*See United States v. Quan*, 789 F.2d 711, 715 (9th Cir.) ("Where a prisoner's motion presents no more than conclusory allegations, unsupported by facts and refuted by the record, an evidentiary hearing is not required.") (citing *Farrow v. United States*, 580 F.2d 1339, 1360–61 (9th Cir. 1978) (en banc)), *cert. denied*, 478 U.S. 1033 (1986).

As discussed above, all of Petitioner's contentions are contradicted by the facts and the law. Accordingly, an evidentiary hearing is not warranted. *Quan*, 789 F.2d at 715 (citing *United States v. Bronstein*, 623 F.2d 1327, 1330 (9th Cir.), *cert. denied*, 449 U.S. 842 (1980)); *see also United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir. 1990) ("To warrant an evidentiary hearing, a petitioner must 'make specific factual allegations which, if true, would entitle him to relief.'" (quoting *Baumann*, 692 F.2d at 571)).

## **CERTIFICATE OF APPEALABILITY**

In dismissing a Section 2255 Motion, the Court must address whether Steidell should be granted a Certificate of Appealability ("COA"). *See* Rules Governing Section 2255 Proceedings R. 11(a). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Slack v. MacDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Based on the above analysis, the Court finds that reasonable jurists could not find the Court's rulings debatable. Accordingly, the Court DENIES the issuance of a COA.

## CONCLUSION

For the reasons stated above, the Court DENIES Steidell's Section 2255 Motion and DENIES a Certificate of Appealability. The Clerk of the Court shall enter judgment in favor of the United States and close the case file.

IT IS SO ORDERED.

DATED: August 25, 2017 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

Steidell v. United States of America; CR 12-01259-02-DKW; **ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**